May it please the Court, Charles Scarborough for the United States as amicus curiae supporting the appellant, the key tamer, later. This case involves allegations that Cintas violated the False Claims Act by securing contracts governed by the Service Contract Act under the false pretense that it would comply with the Service Contract Act's prevailing wage requirements and then knowingly submitting false claims for payment under those contracts that implicitly certified compliance with that condition of payment. The District Court dismissed the case for failure to plead fraud with the specificity required under Rule 9b, but its analysis showed that the Court fundamentally misunderstood the elements of liability under the implied certification and the promissory fraud theories. The United States is participating in this appeal to address three discrete legal issues, and we don't take a position ultimately on the merits of how this case should come out. But first, we would urge the Court to adopt expressly the theory of implied certification. You want an express adoption of an implied theory? Well, again, it's an implied certification theory that five circuits to date have adopted. No, I shouldn't tease. I understand. It is sort of a funny wordplay there. But the premise of the implied certification theory is a pretty well accepted one, recognized in a lot of circuits and acknowledged by a lot of others that haven't quite adopted it. It holds that claims for payment that contain no express false statements on their face may nonetheless be deemed legally false where the person knowingly fails to comply with an underlying condition of payment. And that's a relatively, we think, uncontroversial proposition that this Court came very close to adopting in the Hendow case previously. The second issue that we're participating on is the District Court's erroneous limitation on the promissory fraud theory of liability. And it's our view that where the complaint alleges that a person entered into a contract, but he did not intend at the threshold to comply with its terms, and then he did not comply with those terms, and then submits claims for payments under the contract, that that makes out an allegation of promissory fraud. And there doesn't need to be anything independently false, any independent front-end false statement. Yes, and the particularity requirement really goes to the inducing, which is the fraudulent act. Well, yes. The fraudulent act is at the front end in the promissory fraud theory. That's precisely right, Your Honor. And the final issue that we're participating on is one that's actually sort of very current in the courts of appeals. A lot of courts are addressing sort of the specificity required under Rule 9b. And in particular, where the theory that the relator is proceeding under does not actually depend on anything specifically false in the claim, in the applied certification theory. It's the United States' view that you don't have to identify specific false claims, much less specific certifications in those false claims. You just have to lay out how those claims were sort of necessarily submitted. And the Lusby case in particular, in the Seventh Circuit, makes that clear, that it's sufficient for you to sort of lay out the fraud that occurs at the front end, lay out the noncompliance with the underlying condition of the payment, and then explain how it is that claims must have been submitted. You don't have to then go and point to particular claims and invoices, because oftentimes you may not have that theory, may not have that evidence available to you at the pleading stage. So those are the three issues that we're participating on. And I'm happy to address either one, you know, any of those in greater detail, depending upon where the Court's interests lie. But I guess I would like to start with the implied certification theory and sort of why we think the district court got it wrong. Specifically, the Court held the complaint here was deficient because, and I'm quoting now, it never alleges that Cintas certified that it had complied with the Service Contract Act, and also never alleges a single instance where the government required certification. That's at Excerpt of Record 14. The Hendow case makes clear that certifications are in no way required for False Claims Act liability. What you need is false statements. And the implied certification theory makes clear that you don't even really need a false statement on the face of the claim itself, that the claim can be deemed false if there is a condition of payment underlying it, and you haven't complied, and you know you haven't complied, and you nonetheless turn around to the government and say, we want to be paid on this. That's really, that's the theory, and that's, we don't think it's a special exception. Kennedy. What about Hendow's requirement that we be specific in false statements or fraudulent course of conduct? Well, again, I think that what they were talking about there was the front-end false statement under a promissory fraud theory. There you had a front-end promise to comply with what was the condition of payment was this incentive compensation ban, which was a necessary requirement for the payment of Title IV funds in that case. And, yes, you do need specificity in sort of what the fraudulent conduct is, absolutely. But you don't need to be able to point to a particular invoice and say, oh, and there is a certification in there that is false. The whole premise of implied certification liability is that, well, you know that you have to comply. You know you have to pay prevailing wages under the Service Contract Act here. And you know that you have not complied with that. And you turn around and submit a claim to the government and say, I want to be paid on this contract, even though I haven't done that. So there doesn't need to be anything, you know, a box that you check that says we certify that we have complied with the Certified Contract Act. That's the theory of implied certification. How far does that go, meaning implied certification could potentially go any time any company submits a bill to the United States government, and the legitimacy of the bill is premised upon having performed the contract? I mean, I submit a bill to the government for services performed, and I did nine out of the ten services, but I know that that tenth I didn't do. I mean, why is that not common? Why does that not qualify as appropriate pleading? I mean, why is that not an implied certification that satisfies the standard you're putting forward? Well, there's at least two important limitations on it. The first is the knowing requirement. The False Claims Act contains this. Yeah, my hypothetical premise. The knowing requirement. Well, I do think that, but I think that's important to sort of state at the outset, is that, you know, you know that you haven't complied with something that you needed to do, and you nonetheless submit a claim for payment. It's not so preposterous to actually impose liability there. The second sort of limitation I would point to is that the condition of payment has to be material. It has to have a nexus to payment. So if it was something utterly unrelated, you know, you have to mow your lawn twice a week, you know, in order to have funds, I think there would be an argument that the defendant could make, certainly at the summary judgment stage, that this is not material to the government's payment decision. That's very different from the case that we have here, where the Service Contract Act prevailing wage requirements really are important. They're sort of, you know, part of what the government bargains for when they enter into these contracts is not just to get the uniforms made for the various agencies, it's to get them made, you know, according to the prevailing wage requirements of the Service Contract Act. So, you know, maybe I'm after not so much pleading as just your definition of fraud. This is to say, if I submit a bill to the government not having complied with all the requirements of the Service Contract Act knowing that I have not complied, that's fraud. That's your definition of fraud under the statute. Yeah, because you're trying to get the government to pay out money to which you're not entitled. And I don't think that's, I mean, that's something the Supreme Court has said in the Neifert-White case, and courts have said over and over again. So I don't think it's really as far-reaching as the defendants would have you believe and, you know, as you seem to be worried about. Well, I mean, there are lots of things that people do in which they claim money they're not entitled to that's not fraud. They're just making a claim and they lose. Well, I understand, and I think that's why the knowing requirement is very important and that it be noncompliance with an underlying condition of payment that has a nexus to payment, that is material. Okay, I understand your point. Thank you. So that's the limitation. I'm not sure whether it makes sense for me to reserve any time, but I think I just will, unless the Court has any further questions. Why don't you save time, and if you have something, do you want to respond? Okay, thank you. May it please the Court. I'm Peter Nussbaum, and I represent UNITE here, the relator in this case. There are two issues before the Court. The first one deals with the sufficiency of the complaint under Rule 9b. The second issue which we've raised is whether the district court has jurisdiction, an issue we think the district court should have decided but didn't, and we would urge the Court to make a decision on that now to avoid probably another repeal. But I'd like to concentrate with regard to the sufficiency of the complaint. We're not before the Court on a question of whether or not UNITE proved fraud after a trial. We're here to decide the sufficiency of the complaint, and we've pled fraud under two theories, under promissory fraud and under implied certification. And I just would like to add one thing to what Mr. Scarborough said about that. Although Hendau indicates that the Ninth Circuit has not reached the issue of implied certification, I would point the Court to a case that's cited in the briefs. It's United States ex-reli, 245F3-1048-1053. That was a case where the Court didn't talk about implied certification, but in fact it was a situation where there was no explicit certification, but the Court found that it was still a proper False Claims Act case. So it recognized that in certain types of situations, you can have fraud against the government under the False Claims Act without an explicit certification, although it didn't turn that implied certification. Let me turn now to Rule 9b. 9b, as you all know, sets forth a heightened pleading standard. But it doesn't require the relator to prove fraud in the complaint. It's also not meant to eliminate discovery that may be done in the case, because these fraud cases, the relator often doesn't have the inside information and needs to do discovery. All that a complaint needs to be sufficient under 9b is that it plead with enough particularity to allow the defendant to answer and to give assurance to the Court that there is some factual basis for the allegations in the complaint. And I think the standard basically remains the same after Twombly and Iqbal, and I refer the Court to the standard may not remain the same under them, but they're doing Rule 8. Rule 8 just creeps up on Rule 9. Well, that's how I read it, actually. And I refer the Court to Moss v. Secret Service, 572 F3rd 962, where the Court talked about the application in a non-FCA false claims act context, and also to the Fifth Circuit case we cited, Grubbs, which talks about it in a false claims act context. I think it's clear in this case that Sintas has enough information to be able to file an answer. They've never claimed that they can't file an answer. And in fact, all Sintas needs to do to answer is to look at the contracts which we attach to the complaint, determine which plants the work was done at, which should be fairly simple, and then look at the payroll records to see if the employees were paid the proper rate. So I don't think it's a very difficult thing and they can't answer. Let me turn now, walk the Court through some of the elements of what we needed to plead. And let me turn first to the issue of falsity, which Judge Fletcher, you were mentioning before. Again, we plead falsity under both implied certification and under promissory fraud. Sintas argues that our allegations are insufficient because we didn't allege a specific violation of the Service Contract Act. That's simply not true. We plead facts that have proven are going to establish scores of violations of the Service Contract Act. And let me explain to you why. The first is with regard to the benefits paid to the employees. We've alleged, and there's no contest about this, that Sintas has a nationwide benefit policy that sets forth vacation and holidays for all of its employees. Also, we've given 12 specific examples of employees who didn't get the vacations and holidays required by the Act. There was no need for us in the second amended complaint to identify every employee who didn't get it because there's no question that they have a nationwide policy that applied to everyone. Those were the benefits they got. Therefore, every employee who worked on government work was not properly provided with benefits. Let me turn now to the wages of the employees. We provide, again, representative examples, which is permissible under Rule 9b, of employees who were not paid the proper wages. Again, there was no need for us to name every employee who didn't get the wage. The reason for that is there are regulatory provisions under the Service Contract Act which create certain presumptions. And the presumptions are that if the employer does not segregate the work, which Sintas did not do, and does not keep records of which employees did the work, which Sintas did not do, and we know this from interviewing employees, there is a presumption that every employee who worked in the plant when service contract work was done worked on government work and is entitled to be paid at the highest wage for that government work. It is a rebuttable presumption, but that is the presumption that is established. That presumption is applicable in this case based on our allegations, based on facts that we've gotten from interviewing employees. And therefore, there was no need for us to have to name individual employees. All we have to do is show that work was done at a particular plant and Sintas was applying its nationwide benefit policy, which is delinquent, or was not paying SCA wages, and that would be enough to win a trial. More shouldn't be required at the pleading stage. Let me turn next to the issue of Sienter, which, Judge Fletcher, you also were mentioning. Sintas argues that not every violation of a statute is a violation of the False Claims Act, and they're right about that, there's no question. But the second amended complaint alleges far more than just violations of a statute. It says that Sintas did what it did, not comply with the Service Contract Act, and then file claims for payment knowing, knowingly, that it did not comply with the Service Contract Act. The False Claims Act specifically provides, quote, no proof of specific intent to defraud is required. It's 29 U.S.C. 3729B. Sintas' promises were made knowingly under the statute if it had actual knowledge, if it was deliberately ignorant of the truth, or if it recklessly disregarded the truth. 9B says that you can plead Sienter generally. The Odom case in this circuit says all you have to say is Sienter was present. We did far more than that in this case. If a fraudulent scheme is adequately pled, which we did, Sienter can be based on reasonable inferences, and I would refer the Court to the Cooper case and the Glenfed case. You know, as your time is running, if you don't mind my pushing you forward a little bit, speaking only for myself, it seems to me that Rule 9B probably is satisfied. I'm waiting to hear Sintas try to talk me out of that. But I have to say, again, speaking only for myself, I'm somewhat dubious as to whether we ought to reach the public disclosure question. Okay. Let me turn to that, then, if that's okay. I think there are several reasons why the Court should turn to that issue now. This was an issue, first of all, it is a jurisdictional issue. And Rockwell, the Supreme – from the Supreme Court, indicates that that kind of jurisdictional issue in a false claim context is supposed to be decided first. It was fully briefed to the district court, not once, but twice. Sintas took the position, and I think they were right, that there is no dispute in terms of how they claim the public disclosure was made. Sintas claimed that it had sufficient information to be able to bring this to the Court. We agreed there was sufficient information to hear the issue. The district court heard the issue and, in fact, said it oral argument the second time around on the second amended complaint that she was disposed to find that there was jurisdiction. Then, lo and behold, the opinion came out and the Court said it didn't need to reach it. And what is the public disclosure that Sintas claims is sufficient to make this a non-qualifying claim? Okay. Sintas, for there to be a public disclosure, there must be sufficient information disclosed from which – which either shows the fraud or from which fraud could be reasonably implied. Right. I understand that. Sintas does not claim that fraud in itself was disclosed. It says that it can be drawn – a reasonable inference can be drawn from two pieces of information that it says were publicly disclosed. Let me start with the easier one, and I think that disposes of the issue, because Sintas says both of them had to be present in order to do it. She needed both of these public disclosures to be able to make the inference. The first piece of information is the wages that Sintas was paying. There is no claim from Sintas that there was any disclosure of what was being paid to workers working under government contracts. That was not disclosed. What Sintas says is that Unite, the Relator, in litigation and in press releases, in its attempt to organize workers, publicized the fact that Sintas generally pays low wages. Paying low wages says nothing about what Sintas was paying workers under federal contracts. Unite, when it investigated this, looked at the specific wages that were being paid. But simply saying in public that Sintas pays low wages without comparing those making that claim with regard to workers who are covered by the Act is not a disclosure of the wages Sintas paid, and it's not a disclosure from which a reasonable inference can be drawn that Sintas wasn't paying those wages. Sintas points to a formula set out in a number of cases, including Ninth Circuit cases, that you need X plus Y equals Z, Z equals the fraud, X and Y are the two factors that you have to prove. And one of them is the true state of the facts. The other is the false thing that was said. The wages that were disclosed here... Okay, I got that. The second part? Well, the second part, you don't have to reach the second part. I understand. The second part has to do with the government contracts. They were, Sintas said, publicly disclosed because they were on the Internet. The False Claims Act, the public disclosure bar, was a compromise that Congress worked out after three attempts between trying to allow relatives to bring cases and not to allow parasitic cases. I understand. Okay. And Congress, as part of that, set forth in the statute three specific fora, criminal, civil, regulatory actions, congressional things, and the news media. Sintas wants the court to take the position that the Internet comes within the news media. We don't believe that that is true. It certainly wasn't meant to be included in 1986 because it didn't exist at that time. Congress has since amended the act several times. It has not gone and changed it to include the Internet. We think that the proper way to view that is the court's decision in the hate case, H-A-I-G-H-T, which involved FOIA requests, and the same kind of argument was made. And what the court said is, no, a FOIA request does not fall within any of those, those three enumerated categories. Something that you receive that comes out in a FOIA request can be a public disclosure, but only if it came from one of the three fora. The same would be true here. If something got off the Internet which came from one of the three designated fora, it would be a public disclosure. It didn't in this particular case because those contracts didn't come from any of the three designated things. Okay. Why don't we hear from the other side, and you've saved about a minute and a half. I've lost track of time. I'm not sure. I think something like that. No, no, you've got about a minute and a half left. Okay. Thank you very much. Thank you. Now, before you begin, just so you don't feel as though there's an unfair ganging up, they've got 25 minutes. You take as much time as you need. Thank you, Your Honor. Up to 25 minutes. Sure. I understand. Okay. Good thing you said that. I might have gone along all day. Okay. May it please the Court, my name is Greg Udder. I, along with Mark Dostker, my colleague, represent St. Austin as a matter. Notwithstanding Judge Fletcher's sentiments, I believe this case is properly disposed of under 9b. When we examine the complaint that Unite filed in this case, there is not one falsehood in the complaint. There's not one allegation of a falsehood, of a specific falsehood in the complaint. What Unite alleges, if we examine the record carefully, is that the contracts were entered into, the SCA provision is in the contracts, that certain employees worked on garments that they ---- I'm having trouble with that statement. I'm reading paragraphs 79 and 80, for example, in the complaint. I'm not familiar with that. I have 79. Okay. Here comes 79. Unite here is informed and believes and herein alleges that Cintas knowingly and intentionally made false certifications, assertions in the statement of the government and or engaged in fraudulent course of conduct for the purpose of creating a false impression that had paid, was paying or would pay SCA-required prevailing wages and benefits to its covered employees. Sounds like an allegation of a false claim. Sounds like an allegation that ought to pass muster under 12b-6, but not under 9b. Yes, but you said to me that they made no allegation of falsehood. That's right here. I should have made a specific allegation of falsehood that meets the 9b test. Who, what, when, where, how. In the complaint, there is not one human being from Cintas who is identified, who supposedly carried out these falsehoods. There's no who. There's no when this supposedly occurred. If the court examines the complaint, you will see that the only allegation are a couple of instances where employees claim to have, they believe, worked on VA, for instance, garments. There's no allegation that the VA garments they worked on somehow are tied to the one VA contract, which is a one-year contract, that there's no allegation that those two are tied together. That person who made the statement to Unite didn't say, I worked on this VA contract. All we know is that they did VA work at some point during the last decade. Well, the second-minute complaint has 900 pages of exhibits that are attached, and you say we still don't meet the requirements of 9b. Yes, Your Honor. And I think that that's a good example of quantity doesn't trump quality. If you notice, Your Honor, in the – let's turn to the promissory fraud issue for a moment, because what Unite alleges is that every time Cintas entered into these 34 contracts, and part of those 900 pages are the contracts, it formed an intent not to comply with the SCA. Well, corporations don't form intents. Human beings do. Who are those people? Twenty-three of those 34 contracts that are part of this 900 pages of documents aren't even signed. Yet Unite makes the allegation that the people who signed these contracts, which we don't know if they ever were even signed, formed this specific intent. The 11 contracts that do have some sort of signature on them, it's hard to tell who these people are, but let's assume that they're signatures of Cintas people. Who are they? What did they know? Did they know the SCA was part of the contract?  Did they understand what they were saying? You're right, Your Honor, but 9b requires some specificity, some who, what, when, where, how. There's nothing in the complaint that tells us any of the who is it that formed this intent, how is it that we know they formed this intent, when did they form this intent. There's no allegation they told somebody they did this. And I'm sure the Court's aware of other 9b cases. When we go through the other 9b cases, those types of cases that pass muster under 9b are replete with allegations of I, Bob told me this. I know he knows that these test results were false. These test results were, were, were jimmied. In the Hendow case, the allegations that passed 9b muster was that there were fake employment files created, fake employment files given to the government, fake employment files given to the government, and that the people who made the allegations were insiders. They named names. They identified the perpetrators of the fraud. Not one person from Cintas, not one manager, not one person in a position to commit a fraud is named in the complaint. These are general allegations, and to your point, Judge Fletcher, 79 and 80 are very generalized allegations, the type of allegations that you would think would pass muster under 12b-6, but that don't meet particularity requirement under 9b. There's nothing in paragraphs 79 or 80 that talks about what the fraud is, who did it, how it was done, when it was done. As the district court said in this case, what we have here is an allegation of a breach of contract with an added element of scienter. Under the Hopper case, this Court's decision in Hopper, that's not enough. There has to be some level of specificity of the fraud, something to meet the who, what, when, where, how, and I was listening very carefully to counsel's comments to you about what was in the complaint, and I noticed a conspicuous absence of any reference to who was involved, how they know it was involved, how they know Cintas knew that they were committing a falsity. All I heard them talk about is we have contracts that had the SCA provision in it, we interviewed some employees, we had some statements from employees that we believe we worked on government work, not even tied to the contract, but assuming it was tied to the contract, and then ---- As you say, assuming. Would any government work not have been tied to an SCA contract? Oh, certainly. It is not uncommon for contracts for laundry services to not include SCA provisions, and indeed, that's probably why there are only 34 of them attached to the complaint. As is in the record, Cintas has 34,000 employees, they have 400 locations across the United States, they're the largest laundry manufacturer in the country. They do more work for the United States government than any other entity does for laundry services. So the 34 is a very small number of the contracts that Cintas has with the government. Many of them do not have the SCA provision. And as you may know by reading the Department of Labor regulations, it is up to the agency to go to the department and ask the department, should we include an SCA provision in the contract? If the department says no, then the agency does not have to put the SCA provision in the contract, which is why it wouldn't be there in every instance. Going back to the point that the district court made, which I think was directly on point, and that is, there is no allegation in the complaint of a falsity. All we have is a contract, an allegation of a breach of contract, and then general allegations of, well, Cintas intended it. That's not enough under 9b. And I defy counsel to tell this Court, we're in the complaint, and I have an opportunity to do it on rebuttal. We're in the complaint. There's an allegation, a specific allegation, as required under 9b, that someone at Cintas, a manager, a human being, knew that SCA work was being done by employees and that that manager knew when an invoice was submitted, if indeed an invoice was submitted, that that falsity occurred. That Cintas was paid, even though it represented to the government that the SCA was being complied with. There's nothing in the complaint where any person from Cintas had that knowledge. Without that, how could there be a fraud? How could there be a falsity? What we have is, what the district court characterized, is a breach of contract. Under the implied certification theory, which, again, I don't believe this Court needs to address, if the Court affirms the district court's decision on 9b, implied certification and promissory fraud are not issues that the Court needs to address, because the complaint is simply deficient under 9b standards, and the issues of implied certification and promissory fraud are irrelevant. Well, it might make a difference which of those two theories, if either, we're looking at what has to be alleged in terms of, okay, if you've got a promissory fraud theory, what do you have to allege to show the promissory fraud, and therefore, what do you have to allege with particularity compared to implied certification? So it may make a difference. Very good point, Your Honor. And as it relates to the promissory fraud theory, as I alluded to earlier, only 11 of the contracts are signed. So how Unite makes this broad statement, and I think it's telling that it makes this point that the signature is entered into by some human being, and they're spread out across the United States, so it's not the same human being. But surely you're not going to defend your argument about particularity, that the signatures put on by your people are illegible, and therefore, bleeding requirements and satisfied. No, I misled you if I was trying to – if you think I was trying to convict you of that. They didn't write the signatures. You guys did. Yes, sir. That's correct. My point is, again, I'll go back to the first element of the who, what, when, where, how. Who? Who did this? I mean, it had to be some human being. Those guys are scribbled, right? Sure. They signed it. And let's assume you can read it and it's Frank Smith. It doesn't matter. My point is there's no statement in the complaint about what Frank Smith knew, whether he even knew the SCA provision was in the contract, whether he somehow formulated a thought in his mind, I know that's there, but I'm not going to – I'm not going to comply, or I haven't complied in the past and I'm not going to comply in the future. There's none of that kind of particularity that relates to the execution of the agreement at the outset. In fact, not one person from Cintas is even identified as having signed the contract. And the significance is not we can't figure out who they are. The significance is they don't know because the names don't mean anything to them. All they alleged was that Cintas didn't intend to comply. But the names do mean something. These are human beings. They all must have formulated in order to pass 9b muster some sort of intent before they signed the contract to not comply with the SCA. Well, what are the facts that they have that support that allegation? And the answer is absolutely none. I mean, they didn't even distinguish or tell the court, I don't even know if 23 of the contracts were signed. They just made the blanket statement that all 34 instances, 34 individual human beings spread out over a decade and across the United States formulated this intent. I think that speaks volumes to what they don't know and what they don't have as grounds for an allegation of falsity. They don't have any specifics, none. And, again, I defy them to point you to the complaint where there are those specifics of who, what, when, where, how of the fraud. But, of course, notice of the fraud charges are certainly contained in that second amendment complaint, aren't they? Generally. Yes, they are. And I think what I'm getting at is that 9b requires more than that. 9b requires specificity. Hendow is very clear in the Bly-McGee case is very clear that there has to be some specificity of who, what, when, where, how. That's the law in the Ninth Circuit. And, frankly, the law in most circuits did interpret 9b. And it's not enough to allege a breach of contract in some general scienter, which is what a counsel suggests is all they have to allege. That's not a law in the Ninth Circuit. As it relates to the implied certification issue, if the Court determines appropriate to get to that issue, I find it curious that it's the United States government who stands here and tells you, please help us out. We can't put this clause in our contracts. After all, we wouldn't be here if the United States government and all of their contracts simply said that your request for payment pursuant to this contract is a certification by you that you've complied with all of the statutes and regulations to which this contract is subject. Now, on this question, I want to make sure I understand what you're asking. I mean, the implied certification requirement does exist with some variations in the other circuits. Are you asking us simply not to agree with those other circuits? No, Your Honor. I think the appropriate approach to the theory of implied certification, and it's been a little mixed in here, to answer your question, the theory that I think is appropriate is the Second Circuit's theory in the Mike's case, where the Second Circuit says implied certification is appropriate where there is a statute or regulation that says a contractor's request for payment is deemed to be a representation that the contractor has complied with the terms of the contract and all the regulations under the contract. So if there – for instance, under the Federal – Now, if you don't mind my interrupting, it seems to me as though the D.C. Circuit has been a little looser in the sense of what constitutes an implied certification. Would you say that we should not agree with the D.C. Circuit? I'm thinking particularly the CWIC case. Right. I believe the CWIC case was decided based upon the – there being a – either a statute or regulation that said that request for payment constitutes certification of compliance or that the form of request for payment said that. I don't believe that the D.C. Court decided that there didn't need to be either a statute or a regulation or a form that stated that. Okay. I believe the cases that do support what the plaintiffs or the appellant is suggesting are the Quinn case in the Third Circuit – I'm sorry, the Augustine case in the Sixth Circuit, the Shaw case in the Tenth, and the Abtec in the Court of Federal Claims. So to the extent that I'm just trying to make sure I understand your position, then you're okay with us adopting a theory of implied certification, but you say it shouldn't cover the case in front of us? Is that the argument? Well, the problem is there's been a little misstatement, perhaps, in the briefs about what implied certification means. The appellants are arguing that this Court should imply essentially what you ask counsel for the government. In every case where there's a request for payment by a contractor to the government, there should be implied a certification of compliance with the statute such that if I know that's a falsehood, I'm responsible for a false claim. That's what the government is requesting this Court to adopt. What I am suggesting to this Court is if the Court is going to decide implied certification, it should be only on the basis where either there is a statute or regulation where there's an express congressional intent that if under the SCA, for instance, you, a contractor, submit a request for payment, that's deemed to be a certification of your compliance with all the terms of the contract. There should be a statute or regulation that says that. Or why should that be so? Meaning, assume for a moment, I won't say syntax, assume Company X knows that it was required to submit two things to comply with the contract. It knows that it has complied with only two of those three, and the third that it has not complied with is material of the contract. It submits a request for payment knowing that it has not complied with the contract. First question, is that fraud in your view? It certainly sounds like it. And is then the request for payment saying, I want my money now. Why isn't that then okay? That sounds like a fraudulent act. That sounds like complied certification. I think it comes down to a question of notice to the other party. That is, why isn't, why doesn't the government in their contracts, let me step back from this. It seems to me that the government is asking the Court to do something the government should have done in the first place. The government, if you look at those 34 contracts that are attached to the complaint, the government wrote all of them. They're clearly form contracts. There are a myriad of provisions in those contracts, sometimes 50 different statutes that the contractor is required to comply with. There are literally pages of lists of statutes that have to be complied with. If we're going to say to the contractors that you're going to be bound certifying that you've complied with every one of these 50, shouldn't we tell them that? Why isn't there a provision in the contract that the government can say? Well, that's, I mean, in a sense, you already answered the question when I said the hypothetical company here knows that it has not complied with one of three material provisions of the contract and nonetheless submits the bill. You said that's fraud. I think it is. What else do we need? Well, but again, that's easy to apply and easy to give an example, but that's not how it really works. When you look at the contracts that are attached to the complaint, as I said, there are 50 different, in some instances, statutes that the contractor must comply with. And the reality is, in these hundreds of thousands of contracts that go on every year or millions with the government and contractors, it seems to me appropriate that the contractor ought to be told at the outset, if you are going to request payment and if you're going to be found liable for fraud, or you are going to be required to certify compliance with all of these laws. To me, that's what a normal contract says. But on your end, you're cutting it kind of fine. You're saying somebody can submit a payment, request for payment that is fraud, but you're not going to be held liable for fraud unless you've been warned that that's fraud. Well, again, sure. Under your example, Your Honor, it's very simple. One out of three, somebody knows that's fraud. But the reality is that as I guess maybe I'm not articulating it very clearly, there may be 50 different laws that somebody complies with. But then go ahead. Perhaps I don't. But I think that then goes to materiality. I mean, there are going to be some of these laws that have trivial requirements. There may be a lot of them. You know, they're kind of off in the bushes. Nobody worries about them. But if they can show, I mean, there's going to be proof that it's material, it sounds like it's fraud, and if they've submitted a request for payment, that's  There it is. Well, from a policy standpoint, Your Honor, you're asking for or you're proposing that to open up the floodgates of litigation. Because every time some contractor doesn't comply with one of those provisions and submits some invoice, generic as it may be, they're going to be accused of fraud. And then they're required to prove that, oh, no, I didn't know. And then they're going to be accused of a conscious disregard or a reckless disregard for the facts. Every time. Every time an invoice is submitted, if they don't meet the provisions of any one of those 50 different statutes or regulations, then what you're supporting You're assuming, of course, that all of the provisions in those 50 are material if that's what you're falling back on. But materiality is not decided until summary judgment stage. So we are going to open up the floodgate of litigation, false claims cases that are going to be asserted every time somebody doesn't comply with one of those, because we aren't going to know whether any one of those 50 are material until we get to the summary judgment stage. Now, your time is running. Would you like to address the public disclosure issue? Well, I would. I think the first and most important issue is this is an issue that does not need to be decided at this stage. As the district court pointed out in the first decision that she reached, it's premature to make a decision about that if and under what circumstances the information was publicly disclosed ultimately is something that will be addressed down the road. If the court reverses this decision and sends it back to the district court, we will certainly conduct discovery from Unite in an attempt to determine under what circumstances it learned the information, the contracts, under what circumstances it learned the information about the low wages. And there will be a series of document requests, depositions, the typical discovery that's going to take place. And at that point, we will file some sort of motion for judgment on the pleadings or a motion for summary judgment based upon public disclosure. But even if the court were to decide that issue today, that discovery that's going to occur subsequent to this Court's decision is still going to ensue, and we're still going to be back to the district court level addressing the public disclosure issue. So at this point, it just seems to me to be premature to make a decision about public disclosure because it doesn't decide the issue other than as of today it decides the issue, but after we conduct discovery, we'll have a whole new set of facts and information upon which we would ask the district court to make that decision. Well, it would certainly be in the interest of judicial economy, wouldn't it? The court could decide based upon what the court knows today whether there was public disclosure, yes, sir. But it doesn't change the fact that, of course, subject matter jurisdiction could be challenged at any time. And after we conduct discovery, we may renew the motion. But Your Honor's right. You could decide whether, for instance, the Internet is a source of news media for information under the X test of the X plus Y equals Z test. The court could certainly make that decision. The court certainly could also render what is either perhaps an advisory verdict or a decision about whether, based upon the state of the record, the information that was presented sufficiently disclosed the low wages or the violation of the SCA. Based upon the state of the record, the court could decide that. I suspect the record will change as we get back to the district court level if we do discovery on that. Your Honor, if the question is just in the abstract, is the Internet news media within the meaning of the statute, I'm not sure I can even answer that question, because you've got lots of things that are clearly news in the ordinary sense on the Internet. Some of them is just online edition of the New York Times, but some of them are news media that are only on the Internet. So if you just say Internet, I don't even know what you're talking about. Right. Well, it should have been more specific. The contracts that Unite claims to have identified were identified through a series of websites, generally websites that are sponsored by or created by the United States government. I think there's a federalspending.org website that they retrieved this information from, and I can't go beyond what's in the record to specifically tell you what these websites are, and I suspect that's where we're going to get more information to perhaps answer that question. But right now, the only thing in the record is that there are a series of websites from which they got the contracts. You've got 10 seconds, 9 seconds, one last conclusion, one last thought. The only last thing I'd say, Your Honors, is where's the falsity? It's not in the complaint. Thank you. Thank you. Two points very quickly, Your Honor. What I understood with regard to implied certification is the main objection is that in the contracts, there wasn't a box that you would check that says you've complied with all material conditions of payment. That's precisely the argument that was made and rejected in Hendow. I mean, they were saying there weren't any certifications there in the program participation agreements. And the whole point is there don't have to be any certifications. Yes, could the government do that in some instances, say, you know, check this very big box that says I've complied with all material conditions of payment? Yes, but it's not required for liability under the False Claims Act where you have a material condition of payment and where you have knowing noncompliance and the knowing submission of claims. With regard to the 9b issues, the presentation I heard from opposing counsel essentially boiled down to an assertion that sort of where you have very big, broad and complex fraud, you have to be able to mine down and get to sort of the intent of the actual guys on the ground. You can allege knowledge generally, corporate knowledge, especially with a sophisticated company like Cintas, knowledge that they weren't complying with the Service Contract Act. If you accept the theory that you just heard on the 9b issue, you wouldn't be able to ever get at any sort of Medicare or Medicaid fraud. I mean, the people don't know sort of who were the guys who were checking off the They're not going to know. You have to be able to, in the case of supported idea, that you have to be able to allege knowledge generally with sufficient supporting detail so that you understand the basic way the fraud worked and was perpetrated on the government. Thank you, Your Honor. Thank you. Let me turn for a second just back to the public disclosure issue. Cintas believed that it had enough facts to raise this motion twice before the district court. Again, there isn't any question about what the disclosures are. The kind of discovery that they want to do may have to do with whether Unite was an original source, but you don't reach that issue. We know what the disclosures are. The district court could use some guidance from this court about it. And the issue is ripe right now. It's been fully briefed before. And all we're going to end up with is further delay in this case if the district court, when it goes back now, says there's no jurisdiction and we're back up here. I agree completely with Judge Mills. It's an issue of judicial and economy in a context where the issue is fully briefed and was raised by the defendant. Let me mention a couple of other things. It's fully briefed, but is there some possibility that we will learn more things about the manner in which that disclosure might have been made? I don't believe so, because in terms of the ---- Have they even answered the complaint? No. No, they haven't. That was your allegation. Yes, but in terms of the public disclosure, they put in declarations about that and said exactly what the public disclosure was. They cited the Internet sites we're talking about. So you have that in the record, what they were, whether they amount to a disclosure. They also get ---- This is confusing to me. We don't have an answer, yet we have declarations from them. I mean ---- It's a jurisdictional issue, and you're allowed to actually put in declarations under 12b-1 for jurisdictional issues. So that is in the record. Okay. So they've done this as a 12b-1 jurisdictional determination. Well, I don't know whether they phrased it 12b-1, but that's how you can put in declarations, and they're in the record. So I think everything is there. The one issue that could come up, and they're always entitled to do more discovery. It's a jurisdictional issue which can be raised at any time after discovery is done. But at least we'll get into this case. Otherwise, we're just ---- there's a very good chance we'll be back in front of you in two more years on this same issue. Well, we would be so happy to see you. It would be my pleasure. It would be my pleasure also, but I'd like to try to move on with this case a bit. Okay. Thank you. Could I just talk for just for a second? Just a second. Okay. I just want to be clear about who we're talking about in this case. You heard counsel get up and say Sintas is the largest public contractor with the government doing laundry work. This isn't Joe's Laundry. This is a company that has had ---- That's general rhetoric. If you have something specific, please say it. Well, what I want to do is distinguish this case from other cases such as a case, Judge Mills, you had some years ago called Ruta, R-U-E-T-E-R, a false claims case, where the question was whether a contractor complied with a particular wage instead of another wage. Here, their knowledge of what they were doing is reasonably inferred from the fact they're a large company. They've had many contracts. And, in fact, I cite the Court to Exhibit I to the complaint, which is a letter to Sintas from the government about a contract. There's no question this was a contract that they had. And I'd also refer the Court to Paragraph 24 of the complaint, where we allege against based on evidence in the record of contacts Sintas had with an agency about its SCA obligations. Okay. Thank both sides, or maybe all three sides, if I say it that way, for their arguments. USA, XREL, Unite here versus Sintas submitted for decision. Thank you very much. Nice arguments.
judges: Mills, Goodwin, Fletcher W.